UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KYRUS VAZIFDAR, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:11-CV-03117 |
| | § | |
| AIR INDIA, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

## I. INTRODUCTION

Pending before the Court is the defendant's, Air India ("Air India"), motion for summary judgment (Docket No. 30), the plaintiff's, Kyrus Vazifdar ("Vazifdar"), response (Docket No. 36), Air India's reply (Docket No. 37), Vazifdar's sur-reply (Docket No. 38), and Air India's response to the sur-reply (Docket No. 39).[1] Having carefully reviewed the parties' submissions, the record and the applicable law, the Court hereby GRANTS Air India's motion for summary judgment.

## II. FACTUAL BACKGROUND

Kyrus Vazifdar started working as a flight attendant with Air India in 1971. He resigned in 1984 and, that same year, relocated to the United States where he was rehired by Air India. He worked as a cargo agent and then as a customer service representative at John F. Kennedy International Airport in New York. In 1990, Vazifdar was hired as Resident Sales Manager in

[1]The Court issued an Order on December 11, 2012, setting the deadlines for Vazifdar's response and Air India's reply; the Order did not provide for a sur-reply. Nevertheless, without obtaining leave from the Court, Vazifdar has filed a sur-reply. The Court agrees with Air India that it is not obliged to accept the sur-reply because Vazifdar did not have permission to file one. Nevertheless, the Court has decided to consider the sur-reply and, as a result, also considers Air India's response.

Detroit, Michigan. In 2001, Air India asked him to transfer to Houston to become the Reservations Passenger Sales Representative there. Vazifdar claims that prior to moving to Houston, he was provided with details about the new position, the expenses that Air India would cover, and where he would live until he obtained permanent accommodation. Vazifdar accepted the position, which is a grade 12 in the Air India salary system.

In Houston, Vazifdar was responsible for meeting with travel agents, corporations and universities, and participating in trade shows to promote Air India. He also handled customer refunds. Air India had no physical office in Houston; Vazifdar was the only employee there, and he worked from home. Houston was considered an "offline" office because Air India operated no flights in the city.

In 2006-2007, Air India began experiencing economic difficulties because of the declining world economy and reduced passenger numbers. During that time, Air India's losses were 4.479 billion rupees ($103 million). By March 2009, Air India's losses increased to 55.4826 billions rupees ($1.094 billion).[2] In June of 2009, the Government of India agreed to a bailout of Air India on the condition that the company commenced a full restructuring. As part of its cost-cutting measures, Air India decided to close several offline offices, including Houston.

In a telephone conversation from February of 2009, Jude Crasto, the supervisor from Chicago who oversaw the Houston operations, informed Vazifdar that the Houston office had been identified for closure. Vazifdar acknowledges that he knew Air India was operating at "tremendous" losses but claims that he was shocked that the company wanted to close the Houston office since sales at that location had grown by 300% in eight years and he was

[2]The facts are recounted in the light most favorable to Vazifdar. Nevertheless, the Court is of the opinion that Vazifdar has provided no competent summary judgment evidence to rebut Air India's evidence, found in a sworn declaration from the Director of Air India, that the company was suffering economically. In fact, Vazifdar has acknowledged that he knew Air India was operating at a "tremendous" financial loss.

producing approximately $9,000,000.00 dollars in revenue. Vazifdar asserts that Crasto gave him no reason for the closure of the office and when he sought answers from upper management, he was referred back to Crasto, who was dismissive.

In March of 2009, Chitra Sarkar, Air India's Executive Director of the Americas, instructed Crasto that Vazifdar was to relocate to the Chicago office. In a letter to Vazifdar from March 25, 2009, Crasto reiterated that the Houston office had been identified for closure and that Vazifdar would be relocated to Chicago.[3] The letter instructed Vazifdar to take the necessary measures to move to Chicago where he would be given his new assignment. The letter requested that Vazifdar inform Air India of his plans for relocation and the steps he would be taking in "winding up" the Houston office. Vazifdar claims that he expressed concern over blindly traveling to Chicago and informed Crasto that he wanted to continue his position in Houston if possible. Crasto agreed to support Vazifdar in his attempt to stay in Houston. Subsequently, during the summer and in September of 2009, Vazifdar sent at least two letters to Air India's upper management, urging the company to reconsider its decision to close the Houston office.

In November of 2009, Crasto informed Vazifdar that the only position available in Chicago was a pay grade 5 or 6, down from his grade 12. Vazifdar claims that even after learning of the lower salary, he told Crasto that he was willing to transfer to Chicago if he were provided with details about his new assignment but he received no details. Vazifdar asserts that during a telephone conversation in February of 2010, he asked Crasto for something in writing regarding the Chicago assignment but Crasto responded, "[i]f you want something in writing, I'll give you a letter of termination." Vazifdar contends that he called Crasto two days later and was

[3]Vazifdar claims that Crasto's letter was sent on April 28, 2009, but was backdated to March 25, 2009; he also asserts that Crasto asked him to backdate the letter. Vazifdar, however, does not dispute the content of the letter or that he received it.

told that there was no position available for him anywhere and that he was terminated. Vazifdar, who was 65 years old at the time, asserts that he pleaded for his job but Crasto responded, "We in India retire at 58. You people here can work forever."

Vazifdar alleges that instead of accepting his termination, he raced to preserve his retirement benefits. Therefore, Vazifdar submitted what he claims to be a forced letter of retirement on February 19, 2010. In the letter, he states, *inter alia*, that "AI [Air India] business necessitates, shutting down Houston's operations which leaves me with no choice other than retiring" and he thanked management for providing him with the "opportunity to be of service."

Vazifdar claims that he asked to be considered for any other positions with Air India because he wanted to continue working but he was never offered any specific position. He asserts that after he was terminated, he learned that two younger people, between the ages of 35 and 45, were hired for the position in Chicago and for a comparable position to his grade level, which he had been told no longer existed. Vazifdar also alleges that a younger person was hired at the same grade as he at another location and that position was posted just after he was forced out. He further claims that, contrary to Air India's representations, other grade 12 or comparable positions were available in the company.

Vazifdar was not replaced by anyone else in Houston. That office remains closed and Air India has no employees there.

Vazifdar filed the instant suit, alleging age discrimination by Air India under the Age Discrimination in Employment Act ("ADEA"). He also alleges that he was constructively discharged because he was forced to retire under threat of termination.

## III. CONTENTIONS OF THE PARTIES

### A. Air India's Contentions

Air India claims that Vazifdar cannot establish a *prima facie* case of age discrimination because he cannot prove that he was discharged, was replaced by someone younger, or that age played a role in the company's decision. Air India argues that it closed the Houston office based solely on financial hardship. Air India notes that although it had no obligation to do so, it offered to relocate Vazifdar to Chicago but he resisted the transfer for several months until the company could no longer hold the position open for him. Air India contends that the positions Vazifdar claims were given to younger people in Chicago were the very positions that he refused to accept because of the lower salary that accompanied them. Regarding any other positions in New York and Chicago, Air India notes that they were posted in March and May of 2010, long after Vazifdar's retirement and there is no evidence that they were available prior to February of 2010.

Air India further contends that, even assuming a *prima facie* case of age discrimination has been established, the motion for summary judgment should still be granted because it has proffered a legitimate, non-discriminatory reason for its actions, *i.e.*, the Houston office was closed due to Air India's economic hardship and Vazifdar has failed to show that reason was a pretext for discrimination. Lastly, Air India argues that Vazifdar cannot prove constructive discharge because he voluntarily retired and, even assuming that he were compelled to resign, he has offered no evidence that the working conditions were so intolerable that a reasonable employee would have felt compelled to resign.

### B Vazifdar's Contentions

Vazifdar argues that the motion for summary judgment should be denied because there are genuine issues of material fact. He claims that the evidence, including the testimony of his

former supervisor, establishes that he was discharged, rather than voluntarily resigning. He also argues that Air India's offer to transfer him to Chicago was not genuine but was a sham to force him to resign because of his age. Vazifdar also contends that age is the reason for his termination. He asserts that two younger people were hired for the Chicago position that Air India claimed was no longer available. He also alleges that a position was available in New York just after he was forced out. Vazifdar, who was 65 years old at the time, asserts that his supervisor told him that he should have retired at 58, which is further proof that he was terminated because of his age. He further argues that Air India's proffered non-discriminatory reason -- that it was experiencing financial hardship -- was pretextual because, *inter alia*, the Houston office was profitable, Air India continued hiring other people, gave positions to younger people, made massive capital expenditures, and posted jobs in offices other than Houston. Finally, Vazifdar contends that he was constructively discharged because the position that he was offered in Chicago paid less money, was considered a demotion, and he was badgered and harassed by Air India.

## IV. SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56 (c). "The [movant] bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex v. Catrett*, 477 U.S. 317, 322–25 (1986). Once the movant carries this initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See*

*Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). The nonmovant must go beyond the pleadings and designate specific facts proving that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmovant may not rest on conclusory allegations or denials in its pleadings that are unsupported by specific facts. FED. R. CIV. P. 56(e). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 248 (1986).

In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists." *Lynch*, 140 F.3d at 625. "A dispute regarding a material fact is 'genuine' if the evidence would permit a reasonable jury to return a verdict in favor of the nonmoving party." *Roberson v. Alltel Info. Servs*., 373 F.3d 647, 651 (5th Cir. 2004). Thus, "[t]he appropriate inquiry is 'whether the evidence represents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson*, 477 U.S. at 251–52).

## V. ANALYSIS AND DISCUSSION

Under the Age Discrimination in Employment Act ("ADEA"), it is unlawful for an employer "to discharge . . . or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Where no direct evidence of age discrimination is offered, courts have applied a three-step burden-shifting analysis. *See Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 377-378 (5th Cir. 2010) (citing *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973)). Under this standard, the plaintiff must first establish a prima facie case of age

discrimination, and, if successful, the burden shifts to the employer to produce evidence that the plaintiff was discharged for a nondiscriminatory reason. *See Reeves v. Sanderson Plumbing Prods, Inc*., 530 U.S. 133, 142-143 (2000); *Jackson*, 602 F.3d at 378. If the employer meets its burden, the plaintiff must then show that the reason provided was a pretext for discrimination. *See Jackson*, 602 F.3d at 378. Nevertheless, although "intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves*, 530 U.S. at 143.

**A. The Plaintiff's Prima Facie Case**

Traditionally, to establish a prima facie case of age discrimination, a plaintiff must show that: (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class -- over the age of forty -- at the time of discharge; and (4) he was either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of his age. *See McDonnell Douglas*, 411 U.S. at 802-803; *Jackson*, 602 F.3d at 378. However, Vazifdar asserts that the traditional standard should not be used because this is a reduction in force ("RIF") case. Rather, he advocates for what he claims to be an easier standard, *i.e.*, he must show that: (1) he was within the protected age group; (2) he has been adversely affected by the employer's decision; (3) he was qualified to assume another position at the time of the discharge; and (4) there is "evidence, circumstantial or direct, from which a fact finder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue." *See e.g., Amburgey v. Corhart Refractories Corp., Inc*., 936 F.2d 805, 812 (5th Cir. 1991).

The Court holds that it need not decide which standard applies because regardless of any variation in the first three elements, the fourth element, under both standards, requires the plaintiff to show that the employer discriminated against him based on age.[4] In other words, even assuming that Vazifdar has satisfied the first three elements of his prima facie case, the Court is of the opinion that he has failed to meet the fourth requirement under the traditional or "RIF" standard, *i.e.*, he has not shown that Air India discriminated against him based on age. Rather, the evidence, viewed in the light most favorable to Vazifdar, indicates that Air India closed the Houston office based solely on financial difficulties and that Vazifdar's age played no role in that decision. The Court also finds that the reasons Vazifdar has proffered in support of his prima facie case (that Air India experienced no financial hardship, a supervisor made an "ageist" comment to him, and Air India hired younger people in its other offices) are insufficient to show that Air India discriminated against him based on his age.[5]

Nevertheless, since the plaintiff's burden for establishing a prima facie case is "very minimal," the Court will assume that Vazifdar has established a prima facie case and, as such, will proceed to the remaining two steps of the burden-shifting analysis. *Pacovsky v. City of Booneville Miss.*, 347 F. App'x 42, 44 (5th Cir. 2009) (the Court assumed that the plaintiff had established a prima facie case and moved to the other steps of the burden-shifting analysis); *see also Nichols v. Loral Vought Systems Corp.*, 81 F.3d 38, 41 (5th Cir. 1996).

---

[4]Indeed, the Fifth Circuit has cautioned that the elements of a prima facie case "are not Platonic forms, pure and unchanging; rather, they vary depending on the facts of a particular case." *Amburgey*, 936 F.2d at 812.

[5]Vazifdar seems to offer the same allegations in support of his argument that Air India's reason for closing the Houston office was a pretext for discrimination. Thus, the Court will fully address Vazifdar's arguments (that Air India did not experience financial hardship, a supervisor made an "ageist" comment to him, and Air India hired younger people in its other offices) in section C below.

**B. Air India Has Offered a Valid, Nondiscriminatory Reason for Its Decision to Close The Houston Office**

Because the Court has assumed that Vazifdar has established a prima facie case of age discrimination, the burden now shifts to Air India to produce evidence that the decision to close the Houston office was based on a legitimate, nondiscriminatory reason. *See Reeves*, 530 U.S. at 142-143; *Jackson*, 602 F.3d at 378. The employer's burden is easily satisfied because it is a burden "of production, not persuasion" and it need not involve a "credibility assessment." *Reeves*, 530 U.S. at 142; *see also Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 898 (5th Cir. 2002). Moreover, the Fifth Circuit has repeatedly held that a job elimination or reduction-in-force ("RIF") is a presumptively legitimate, nondiscriminatory reason to terminate an employee. *See Baker v. American Airlines, Inc.*, 430 F.3d 750, 754 (5th Cir. 2005); *Nichols*, 81 F.3d at 41; *E.E.O.C v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996); *Meinecke v. H & R Block of Houston*, 66 F.3d 77, 83-84 (5th Cir. 1995).

In this case, Air India has offered evidence that it was in dire financial distress. In 2006-2007, Air India began experiencing economic difficulties because of the declining world economy and reduced passenger numbers. During that time, Air India's losses were 4.479 billion rupees ($103 million). By March 2009, Air India's losses increased to 55.4826 billions rupees ($1.094 billion). In June of 2009, the Government of India agreed to a company bailout on the condition that Air India commenced a full restructuring. Even Vazifdar has acknowledged that he knew Air India was operating at "tremendous" losses. As part of its cost-cutting measures, Air India decided to close several "offline" offices, including Houston where Vazifdar was the sole employee. The director of Air India has affirmed that the decision to close

the Houston office was purely financial and had nothing to do with age.[6] Therefore, the Court holds that Air India has produced sufficient evidence that its decision to close the Houston office was based on a legitimate, nondiscriminatory reason. *See Baker*, 430 F.3d at 754 (reduction in force is a legitimate, nondiscriminatory employment action); *Chavarria v. Despachos Del Notre, Inc*., 390 F.Supp.2d 591, 599-600 (S.D.Tex. 2005) ("a reduction in force is a presumptively legitimate non-discriminatory reason that supports a termination action"); *see also Nichols*, 81 F.3d at 41; *Meinecke*, 66 F.3d at 83-84.

**C. Vazifdar Has Not Shown That Air India's Reason Was Pretextual**

Having determined that Air India has produced a valid, nondiscriminatory reason for closing the Houston office, the burden rests squarely on Vazifdar to establish that Air India's reason was a pretext for discrimination. *See Jackson*, 602 F.3d at 378. A plaintiff may show that the employer's nondiscriminatory reason was pretextual by producing evidence of disparate treatment or evidence that the proffered explanation is "false" or "unworthy of credence." *Reeves*, 530 U.S. at 143 (citations omitted); *Cramer v. NEC Corp. of America*, No. 12-10236, 2012 WL 5489395, at *3 (5th Cir. Nov. 13, 2012) (per curiam); *see also Harris v. First American Nat. Bancshares, Inc*., 484 F. App'x 902, 904 (5th Cir. 2012) (per curiam) (noting that the plaintiff must show "at a new level of specificity" that the employer's reason was pretextual).[7]

---

[6]Although it is not clear, Vazifdar seems to challenge the evidence in the affidavit from Air India's representative. Any such argument, however, is unpersuasive because this Court can "properly" rely on affidavits in reaching a decision. *Jackson*, 602 F.3d at 377 ("Sworn affidavits ... are certainly appropriate for review on a Rule 56 motion for summary judgment").

[7]While Vazifdar correctly notes that a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated (*Reeves*, 530 U.S. at 148; *Machinchick v. PB Power, Inc*., 398 F.3d 345, 350-351 (5th Cir. 2005)), such a showing will not always be adequate. Indeed, "there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." *Reeves*, 530 U.S. at 148. Here, as will be discussed,

Here, Vazifdar alleges that Air India's reason is pretextual because the offer to transfer him to Chicago was not genuine but was a sham to force him to resign due to his age, Air India experienced no financial hardship, a supervisor made an "ageist" comment to him, and Air India hired younger people in its other offices and failed to inform him of other available positions. The Court is of the opinion that Vazifdar's allegations are insufficient to establish that Air India's proffered reason was "unworthy of credence."

Preliminarily, the Court notes that Air India was under no obligation to transfer Vazifdar when it decided to close the Houston office. *See Daniels v. City of Canton, Miss*., No., 3:10CV361TSL-MTP, 2001 WL 5040901, at *4 (S.D. Miss. Oct. 24, 2011) (noting that the "vast majority of courts" have held that an employer has no duty to relocate or transfer an employee to another position when it reduces its work force for economic reasons); *see also Pages-Cahue v. Ibera Lineas Aereas de Espana*, 82 F.3d 533, 539 (1st Cir. 1996); *Ridenour v. Lawson Co.*, 791 F.2d 52, 57 (6th Cir. 1986). Despite having no obligation to do so, Air India offered to transfer Vazifdar to Chicago. Nevertheless, Vazifdar claims that Air India purposefully declined to provide him with the specific terms of the transfer, as it had done during a previous transfer, in an effort to force him out because of his age. Even assuming that Air India was required to but did not provide Vazifdar with details of the transfer, the evidence is uncontroverted that there was an offer to transfer Vazifdar. On the other hand, he has provided no evidence that he ever unequivocally accepted that offer. In fact, the record establishes that Vazifdar repeatedly asked to stay in Houston and even wrote letters to Air India's upper management, urging the company to keep the Houston office open. Therefore, Vazifdar's claim that the offer to transfer him was a sham to force him out because of his age is conclusory and self-serving. *See Johnson v. UAH*

even assuming Vazifdar has made a prima facie case of discrimination, he has not provided sufficient evidence that Air India's legitimate, nondiscriminatory reason is false.

*Prop. Mgmt., Limited Partnership*, 428 F.App'x, 311, 312 (5th Cir. 2011) (the plaintiff's assertions were "largely conclusory and speculative," and, as such, were insufficient to establish pretext for discrimination by the employer); *Jackson*, 602 F.3d at 379 (the plaintiff's self-serving statements were insufficient to show pretext).

Next, Vazifdar claims that Air India was not really undergoing financial distress because sales in Houston had grown by 300% in eight years and he was producing approximately $9,000,000.00 dollars in revenue. As Air India notes, however, even if Vazifdar's self-serving statements that the Houston office was profitable were accepted as true, they do not show that Air India's losses world-wide were manufactured, or that those losses did not justify the closure of offline offices like Houston. Indeed, Air India could have decided to close the Houston office, an offline office where it had no flights, and consolidate its work force in cities where it actually operated flights. In essence, Vazifdar is asking the Court to substitute its judgment for Air India's business decision, which the Court is not allowed to do. *See Moss v. BMC Software, Inc*., 610 F.3d 917, 926 (5th Cir. 2010) (the ADEA was not "intended to be a vehicle for judicial second-guessing of employment decisions nor was it intended to transform the courts into personnel managers" and the ADEA "cannot protect older employees from erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated") (citations omitted). Relying on a news article, Vazifdar claims that Air India was not in financial distress because it purchased a fleet of new airplanes. The Court is of the opinion that even if Vazifdar's allegation is accepted as true, the fact that Air India may have decided to purchase new planes is not evidence that it was not suffering from financial hardship.[8] For example, Air

[8]Air India objects to Vazifdar's reliance on the article, claiming that it is unauthenticated and hearsay. The Court need not rule on that issue because even if Vazifdar's allegations are accepted as true, they do not support his claim that Air India's reason was pretextual.

India could have decided that new and modern planes would attract more customers, thereby raising revenue. *See Hanchey v. Energas Co.*, 925 F.2d 96, 98 (5th Cir. 1990) (the fact that the employer made a "large expenditure" did not support the plaintiff's argument that the reason for her termination was pretextual). Moreover, as noted, it is not within the Court's province to second-guess Air India's business decision, even if this Court were to disagree with it. *See Moss*, 610 F.3d at 926.

Vazifdar also asserts that two younger people were hired for the Chicago position that Air India claimed was no longer available, that a position became available in New York just after he was forced out, and that positions were posted in offices other than the Houston office. The Court finds those allegations insufficient to demonstrate a pretext for discrimination by Air India. Although the evidence indicates that two individuals younger than Vazifdar -- 44 and 54 years old -- were hired for the Chicago office, those positions appear to be the ones that Vazifdar declined to accept because of the lower salary that accompanied them**.** In fact, in an email from November 6, 2009, Vazifdar called Air India's offer to transfer him to Chicago at a grade 5 or 6, "shocking" and "concerning." Regarding any other positions in New York and Chicago, the evidence indicates that they were posted after Vazifdar's retirement and he has provided no evidence that they were available prior to his retirement. Similarly, Vazifdar's assertion that Air India purposefully did not post job openings in Houston is of no avail because Air India had no obligation to notify him of new positions after he retired and after the company ceased its operations in Houston. *See Martin v. Bayland Inc.*, 403 F.Supp.2d 578, 584 (S.D.Tex. 2005) (an employer is "not required . . . to re-hire [the] Plaintiff for openings occurring after his discharge") (citing *Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 150 (5th Cir. 1995)).

Vazifdar claims that sometime in February of 2010, when his supervisor, Jude Crasto, told him that he would be terminated, he pleaded for his job but Crasto responded, "We in India retire at 58. You people here can work forever." Vazifdar claims that Crasto's statement establishes that Air India's proffered nondiscriminatory reason was pretextual. The Court finds that argument unpersuasive.

The Fifth Circuit has "repeatedly held that 'stray remarks' do not demonstrate age discrimination." *Moss*, 610 F.3d at 929 (citations omitted). In order for an age-based comment to be probative of an employer's discriminatory intent, "it must be direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumption that age was an impermissible factor in the decision to terminate the employee." *Moss,* 610 F.3d at 929. Furthermore, remarks may serve as sufficient evidence of discrimination if they are: (1) age related; (2) proximate in time to the employment decision; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision. *See Jackson*, 602 F.3d at 379.

Here, one possible interpretation of Crasto's alleged remark may be that he was simply comparing compulsory retirement in India to the fact that a worker in the United States can generally work until whatever age he desires. Given the fact that the purported remark is subject to more than one reasonable interpretation, the Court is of the opinion that it is not so "direct and unambiguous" to allow a reasonable jury to conclude "without presumption" that age was an impermissible factor in the decision to ultimately terminate Vazifdar. *Moss*, 610 F.3d at 929 (statement that the company was looking for "more junior level" people was not probative of age discrimination); *Barber v. Shaw Group, Inc.*, 243 F. App'x 810, 811-812 (5th Cir. 2007) (per curiam) (a statement that the plaintiff would be terminated soon because he was "an old man and

getting close to retirement age" was not sufficient to create a material fact issue on whether the employer's decision was motivated by age); *see also Texas Instruments*, 100 F.3d at 1181.

Moreover, even assuming that Crasto's statement was age-related and not a stray remark, the Court finds that it is not sufficient evidence of age discrimination because Crasto, while he supervised Vazifdar, was not the one who decided to close the Houston office, nor did he determine that Vazifdar would no longer be offered a position in Chicago. Rather, those decisions were made by Air India's executive board[9]. In fact, by writing to Air India's upper managers, including the "Chairman Managing Director," and urging them to keep the Houston office open, Vazifdar acknowledged that Crasto had no authority over such decision. *See Barber*, 243 F.App'x at 812 (age-related comment was not sufficient to show discrimination because it was made by a foreman with no authority over the employment decision at issue); *Nichols*, 81 F.3d at 41-42 (even if remark was not a stray comment, it was not probative of discrimination because it was not made by the relevant decision maker).

**D. The Plaintiff's Constructive Discharge Claim**

Vazifdar does not dispute that he retired. Nevertheless, he claims that his retirement qualifies as a constructive discharge because it was forced. Air India, on the other hand, contends that Vazifdar voluntarily retired in order to preserve certain benefits and, in any event, has failed to establish that he was constructively discharged. The Court holds that Vazifdar has not met his burden of establishing a constructive discharge.

Demonstrating constructive discharge "imposes a high burden" upon the employee. *Robinson v. Waste Management of Texas*, 122 F. App'x 756, 758 (5th Cir. 2004). To meet that burden, the employee "must offer evidence that the employer made the employee's working

---

[9]Although he was not the decision maker, it is worth noting that the evidence establishes, and Vazidfar has acknowledged, that Crasto actually agreed to help him in his quest to keep the Houston office open.

conditions so intolerable that a reasonable employee would feel compelled to resign." *Brown v. Bunge Corp*., 207 F.3d 776, 782 (5th Cir. 2000). The "subjective state of mind of the employee is irrelevant." *Robinson*, 122 F. App'x at 758. Rather, the test is a "reasonable employee" test and the court can find in favor of the employee only if he shows that the decision to stop working was "reasonable under all the circumstances." *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 650 (5th Cir. 2004); *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994).

Whether a reasonable employee would feel compelled to resign depends on the facts of each case, but a court should consider the following factors "singly or in combination": (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status]. *Brown*, 207 F.3d at 782.

In this case, assuming that Vazifdar has shown factors one, two, three, and seven (demotion, reduction in salary, reduction in job responsibilities, and an offer of early retirement), he has failed to establish other factors. Specifically, he has not shown that he would have been reassigned to menial or degrading work, that he would have been reassigned to work under a younger supervisor, or that Air India engaged in badgering, harassment, or humiliation calculated to encourage his retirement (factors 4-6). To the contrary, the evidence, viewed in the light most favorable to Vazifdar, indicates that Air India was a supportive and generous employer. Although it was not required to do so, Air India offered to transfer Vazifdar to Chicago but he did not accept the offer and for several months attempted to influence upper management to keep the Houston office open. Further, Crasto was patient and agreed to support

Vazifdar in his effort to keep the Houston office open, even forwarding a letter from Vazifdar to Air India's upper management. Notably, in his resignation letter, Vazifdar, who is assertive and articulate, does not mention any complaints about his retirement. In fact, he acknowledged that Air India's "business necessitates, shutting down Houston's operations which leaves [him] with no choice other than retiring" and thanked the management for providing him with the "opportunity to be of service."

Given these facts, the Court is of the opinion that Vazifdar has failed to meet his "high burden" of showing that Air India "made [his] working conditions so intolerable that a reasonable employee would feel compelled to resign." *Brown*, 207 F.3d at 782; *Robinson*, 122 F. App'x at 758-759; *see also Barrow*, 10 F.3d at 297 (the court can rule in favor of the employee only if he shows that the decision to stop working was "reasonable under all the circumstances").

## VI. CONCLUSION

Based on the foregoing discussion, the Court holds that Vazifdar has failed to establish that Air India discriminated against him based on age or that he was constructively discharged. Therefore, the Court GRANTS Air India's motion for summary judgment in its entirety.

It is so **ORDERED**.

SIGNED on this 29th day of January, 2013.

Kenneth M. Hoyt
United States District Judge